Eckenroad, Appellant, *v.* Rochester & Pittsburgh
Coal Company.

Submitted April 13, 1942.

Before KELLER,
P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES,
HIRT and KENWORTHEY, JJ.

*George Jerko,* for appellant.

*Henry I. Wilson,* with him *H. Vernon Fritchman,*
for appellee.

Opinion by Cunningham, J., July 23, 1942:

After an award by a referee of compensation for disability, total at first and subsequently partial, had been reversed by the board, and its order of disallowance affirmed by the court below, Clarence Eckenroad, the claimant, appealed to this court from the judgment entered in favor of his employer. The board having found as a fact "that the claimant has failed to show that he suffered a compensable accident," (within the meaning of Sec. 301 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §§411, 431, as last amended by the Act of June 21, 1939, P. L. 520,) that finding is conclusive and cannot be disturbed, if based upon sufficient legally competent evidence, even though there is also competent evidence which, if believed, would have justified different findings: *Corrento v. Ventresca et al.*, 144 Pa. Superior Ct. 358, 362, 19 A. 2d 746, and cases there cited.

The only question of law involved upon this appeal is whether the above quoted finding of fact of the board is so "justified": Act 1939, supra, 77 PS §834. These facts are not in dispute under the testimony: Claimant, thirty-five years of age, had, for a long period of time, been afflicted with a malformed and potentially disabling condition of the bony structure of his lower back; for several months prior to January 31, 1940, his duties consisted of carrying boxes of dynamite and "dummies" from the blacksmith shop at one of the defendant company's mines a distance of about twenty-five feet where they were loaded into a mine car; these "dummies" are described as rolls of clay, 12 inches in length and 1½ in diameter, used to tamp sticks of dynamite; each box when filled weighed about sixty pounds. There was also uncontroverted evidence that claimant, while engaged in this work on January 31, 1940, was overtaken by a disability which was at least partial at the time of the hearings before the referee.

Claimant while testifying before the referee thus described the incidents upon which he based his contention that he had met with an "accident" in the course of his employment: "I had picked up all my other boxes and carried them out and it didn't bother me, but this one particular box, the same weight as the rest, I picked it up and just as I stepped away with the box I tramped on a bolt or something and it made me lose my hold on the box. It straddled my left leg kind-of and I lost my balance and got this pain in my back and dropped the box, and it's bothered me ever since."

If this testimony had been accepted by the fact-finders as true, it might have furnished some basis for an argument in behalf of claimant that the preexisting condition of his back had been so aggravated by an unexpected and untoward happening, outside of the usual events incident to his employment, as to entitle him to compensation for any ensuing disability. But as no reference was made in the claim-petition, or in any of the histories given by claimant to attending physicians, or representatives of the employer, of these external events, and as his testimony was contradicted by other employees working with him at the time, both the referee and the board, as was within their province, totally rejected it.

The finding of fact of the referee upon which he based his award was "that the disability of the claimant was the result of a strain while lifting a box of 'dummies' ...... superimposed upon a potentially disabling back, creating an acute condition, as the result of which the claimant was disabled ......" As further explained by the referee, his conclusion that claimant had sustained an "accident" was based entirely "upon the fact of the lifting of the box when the acute condition came on."

The board, however, upon the employer's appeal to it, set aside the findings of fact and conclusion of law of

the referee and substituted its own. The material underlying finding by the board reads:

"Fourth: That on January 31, 1940, about 6:00 P. M. the claimant was engaged in his *usual duties* of loading material to be taken into the mines that evening; that among this material were several boxes of so-called 'dummies,' each box weighing approximately sixty pounds; that after carrying several of these boxes to a car, the claimant suffered *a pain* in his lower back while lifting a box similar to those which he had already loaded; there being no credible evidence to indicate that at the time claimant felt the pain in his back he was doing anything *unusual* to his employment or doing a usual act in an *unusual* way." (Italics supplied.)

Based upon its analysis and consideration of the medical testimony introduced by the employer, and particularly that of Dr. S. V. Algin, who had made X-ray pictures of claimant's back, the board specifically found claimant's disability resulted from "bony changes in the structure of [his] body, having no causal connection with the alleged accident."

In his able and comprehensive opinion supporting the judgment in favor of the employer, CREPS, P. J., of the court below, directed attention to the fact that counsel for claimant predicated his argument upon the finding of the *referee* that claimant had sustained "a *strain* while lifting the box," rather than upon the finding of the *board* that he merely "suffered a *pain* in his lower back" at that time. An excerpt from the opinion reads: "In his brief, claimant's counsel argues that 'if an employee sustains a sprain or a strain, this damage to the physical structure of the body is of itself an accident' and that 'since the claimant sustained a sprain . . . . . . he has shown a compensable accident . . . . . .' Admitting for the purposes of the argument that possibly a strain or sprain could be classed as an accident

in the legal sense, the difficulty is that counsel assumes that claimant 'sustained a sprain,' a fact which the board did not find. Nor can it be said that the board was required to find the existence of a sprain as the *only* cause of the disability, particularly in view of the testimony of Dr. Algin that the diseased condition of claimant's spine was such that disability could arise from natural causes."

We adopt the following paragraph from the opinion of the court below as a correct summary of the testimony of one of the employer's medical experts:

"While in the hospital, X-ray pictures were taken of claimant's spine by Dr. S. V. Algin, a roentgenologist employed in the institution and called as a witness for defendant. At the hearing he testified that the pictures failed to reveal any damage or injury of a traumatic nature and his conclusion was that claimant's disability is due to a malformation of the vertebra, resulting in a complete sacralization[1] of the transverse processes of the fifth lumbar vertebra and non-closure of the arches between the vertebral bones. When asked whether the condition he found in the back was of 'recent origin or of old origin,' he stated that it 'is an old condition, of long standing disease of the margin of the fourth lumbar vertebra,' and that that condition 'was not of traumatic origin.' To a question on cross-examination, whether a 'strain or sprain or a fall would aggravate a pre-existing epiphyseitis,[2] as you call it,' he stated, 'As I told you, I don't think so; talking about this particular case. I am convinced that his disability is due to a malformation of his lower back.' "

This medical testimony amply justifies the findings

---

[1] "Fusion of the sacrum to the fifth lumbar vertebra." (Gould's Medical Dictionary.)

[2] "Inflammation of an epiphysis—a process of bone attached for a time to another bone by cartilage, but in most cases soon becoming consolidated with the principal bone." (Gould.)

of fact of the board and its conclusion that the claimant failed to show he had suffered a compensable accident within the meaning of the applicable statute. The present case is clearly ruled against the claimant by the recent opinion of KELLER, P. J., in *Paydo v. Union Collieries Co.*, 146 Pa. Superior Ct. 385, 22 A. 2d 759,—a case in which a claimant, suffering from osteoarthritis of long standing, based his claim for compensation upon the averment that he had twisted and sprained his back while lifting a large piece of "boney" and trying to throw it into the "gob," during the course of his employment as a loader in the defendant company's coal mine. Reference is made in the case just cited to such recent decisions of our Supreme Court as *Adamchick v. Wyoming Valley Collieries Co.*, 332 Pa. 401, 3 A. 2d 377, *Harring v. Glen Alden Coal Co.*, 332 Pa. 410, 3 A. 2d 381, and *Crispin v. Leedom & Worrall Co.*, 341 Pa. 325, 19 A. 2d 400, in which it was definitely held that in order to secure compensation there must be proof both of an accident and of an injury; that an accident cannot be inferred merely from an injury; nor can an injury be inferred simply because there was an accident. In *Crispin v. Leedom & Worrall Co.*, supra, the proposition, that disability or death merely hastened by the work in which the employee has been regularly engaged cannot be treated as accidental, was reaffirmed.

By substituting "back" for "heart" we may adopt the concluding paragraph of the opinion in the Crispin case as conclusively disposing of the present appeal:

"Here, a man with a chronic [back] condition, engaged in his customary occupation, under conditions which were not unusual but ordinary, performing an act in which he had engaged on numerous other occasions, further damaged his already damaged [back], not as the result of an accident but in the normal performance of his employment. We are unable to find anything in the Workmen's Compensation Act which would warrant our sustaining his claim."

Judgment affirmed.