## Bonzani, Appellant, *v.* Hillman Coal & Coke Company.

Argued April 30, 1942.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT
and KENWORTHEY, JJ.

*Vincent M. Casey*, with him *Margiotti, Pugliese & Casey*, for appellant.

*R. M. Steffler*, for appellee, was not heard.

OPINION BY HIRT, J., September 30, 1942:

The single question in these appeals[1] is whether, in the light of the testimony, the lower court properly entered judgment for defendant, affirming the conclusion of the compensation authorities that the death of claimant's husband was neither caused nor hastened by injury from accident.

In the course of his work in defendant's mine, decedent, on December 3, 1936, was injured when his body was squeezed between a moving coal car and a post. He died on March 18, 1938 of carcinoma of the lower stomach which had spread to the large intestine, the

---

[1] The appeal in No. 257 is from the judgment entered for defendant. The second appeal, No. 256, is from an order refusing to set aside a final receipt. Bonzani executed the receipt on January 16, 1937. He moved to have it set aside about one year later because of mistake of fact. He died before hearing and the proceeding was consolidated with his widow's claim for compensation; the petition was denied. On the hearing on the merits of claimant's case, the final receipt was properly ignored as of no significance because of the finding that the disability which Bonzani suffered after signing the final receipt was in no way related to the accidental injury of December 3, 1936.

liver and pancreas, the peritoneum and the lungs. There is sufficient competent evidence in the unequivocal testimony of defendant's medical witnesses that there was no relation between the injury either as a cause or aggravation of the cancer. This testimony, accepted by both the referee and the board in refusing compensation, is conclusive of the question regardless of whether claimant's medical testimony would have justified contrary findings sufficient to support an award. *Corrento v. Ventresca et al.*, 144 Pa. Superior Ct. 358, 19 A. 2d 746; *Kasman v. Hillman Coal & Coke Co.*, 149 Pa. Superior Ct. 263, 27 A. 2d 762. We well might rest our discussion here, were it not for appellant's apparent sincerity in pressing what she believes to be a meritorious claim. We will refer to the testimony.

There is a dispute as to the extent of the injury. When Bonzani was taken out of the mine he was examined immediately by Dr. J. M. Snyder, summoned by defendant, who observed nothing more serious than superficial marks upon the upper part of his body. As a precautionary measure, however, he sent Bonzani to a hospital, for a thorough examination. According to Dr. Snyder's testimony and the hospital records the only evidences of injury were lacerations of both forearms, the upper right arm, and contusions of the chest with "pain and tenderness to pressure." There was no evidence of injury to the abdomen or other parts of the body and though Bonzani gave a history of an accident he did not then complain of injury except to the arms and chest. An x-ray examination was negative as to injury to bony structure. No indication of serious injury was found and Bonzani was discharged from the hospital four days later. He returned to work on January 5, 1937 and the compensation agreement which he then entered into with defendant for the period ending on that date describes the injury as "lacerations of

both forearms and left cheek, and contusions of chest."
On January 16, 1937 decedent signed a final receipt
acknowledging payment of compensation in full to the
time when he resumed his employment. He continued
to work whenever the mine operated, for a total of 52
days until March 1937. In the meantime he complained
of pain in the abdomen, sour stomach and lack of ap-
petite and was treated by his family physician. On
March 23, 1937 he was referred back to Dr. Snyder who
testified that he then complained of pain and had a
cachectic appearance indicative of cancer; the definite
diagnosis, then, was carcinoma of the stomach and
colon. In the opinion of this witness the cancer was
then 'fairly advanced' and that it probably had been
present in an undeveloped stage, at the time of the ac-
cident.

There is testimony of a fellow workman that Bonz-
ani, when struck, was thrown to the ground and on
picking himself up, stood with his hands over his upper
abdomen. His wife testified that following the acci-
dent he immediately and for the first time, complained
of pain in the stomach. On the contrary, the testimony
for defendant is all to the effect that decedent never
mentioned an injury to his abdomen until after March,
1937, when cancer definitely was found to be present
but, thereafter, he gave a history of 'abdominal squeez-
ing' in the accident to physicians who examined him.
The referee found upon sufficient evidence, that "as a
result of said accidental injury he suffered lacerations
of both forearms and left cheek and contusions of the
chest." The board found that "these bruises and con-
tusions were not at or near the site of the after de-
veloped cancer."

Three medical witnesses testified for claimant who
believed or assumed that the cancer was present when
decedent was injured and in testifying, accepted as a
fact that in the accident Bonzani suffered a blow in the

abdomen. Dr. Michael E. Farah, the family physician saw decedent in December 1936; he then complained of pain and sour stomach. This witness stated: "I would attribute his condition to the injury he received." And, basing his conclusions upon the finding in March 1937 of cancer with metastasis to the adjacent organs he said: "I would presume that the injury aggravated the dormant tumor and hastened the metastasis and death of the decedent." In his opinion one blow "will actually aggravate" an existing cancer. Dr. Chester E. Harris, a general practitioner, saw Bonzani on November 23, 1937, and testified that he then had lost about 50 pounds and was anemic and suffering pain in the abdomen. He could not divorce trauma as a factor in Bonzani's death. In the x-ray examination of March 1937 he found evidence of a spreading of the growth and believed that the cancer was present at the time of the injury.

Claimant relies principally upon Dr. R. J. Behan, a surgeon whose testimony, it is asserted must be accepted as authoritative. This medical witness said that he had made a study of the relation of trauma and cancer and had written a book on the subject which was about to be published. In response to a hypothetical question he assumed a crushing injury of the lower chest and the upper abdomen. It was his belief, supported by other authority, that it cannot be said that trauma is not related to cancer. He concluded that the injury "had some significance in the development of [the] cancer" in this case, although in answer to the question: "Is it your opinion that this trauma was a factor in aggravating or hastening, or causing the condition of the carcinoma from which this man died?" his answer was not unequivocal. He said "I would say it *could* hasten the progress of a carcinoma which could be present in the stomach at the time of his injury. I would be hestitant to say that it could cause a carcinoma of the stomach." He did not consider it important,

however, that decedent may not have suffered immediate pain in the abdomen from the accident. He said that a cancerous condition in the stomach could be disturbed by injury without pain and he was positive in his statement that trauma aggravating a cancer hastens its growth.

As against these views, three medical experts, all of whom had treated decedent, testified for defendant. Dr. C. C. Mechling examined him on September 4, 1937; he then complained of colic and rectal bleeding and gave a history of a squeezing of the abdomen in the accident. An x-ray examination was negative and this witness did not "think he necessarily had cancer in an advanced stage, since cancer in the stomach area grows very, very rapidly—probably more rapidly than in any other part of the body." Assuming that cancer *was* present at the time of the injury it was his opinion that there was no connection between the trauma and its subsequent growth. Dr. Harry B. Noah saw decedent at the West Penn Hospital on February 9, 1938 and found a typical case of cancer of the stomach in an advanced stage. He testified that a far advanced cancer might be aggravated by trauma but he found no relation between the single injury to the chest and abdomen (assuming such injury) as a cause or aggravation of an existing cancer and gave it as his opinion that there was no connection. He believed that the thickness of Bonzani's abdominal wall (he then weighed 190 pounds) would serve as a very excellent buffer against trauma and that a 'terrific blow' would be necessary to have any effect. In the light of little positive medical knowledge on the subject, he however, admitted the *possibility* of aggravation from trauma in this case. Dr. J. M. Snyder, of all the medical witnesses perhaps, was in the best position to express an opinion. Decedent was his patient immediately following the accident and he examined him again in March 1937. He

stated positively that in his opinion there was no connection between the injury and death.

The referee stated: "after careful consideration of all the testimony taken in this case, your Referee believes, and so finds as a fact that the accidental injury sustained by the decedent on December 3, 1936 was not a direct or contributing cause in the death of decedent on March 18, 1938." Claimant is right in pointing to deficiencies in other findings of fact which merely review the medical testimony. But these are no more than formal defects and to refer the case back for a restatement of the findings upon that ground would be unproductive of benefit to claimant. The ultimate finding, quoted above, implies an acceptance of the testimony of defendant's witnesses as reviewed by the referee.

The board on appeal observed that because of "the present inexactitude of medical science" an opinion connecting an aggravation of carcinoma with trauma "amounts to little more than a conjecture",[2] it resolved the issue in favor of defendant in affirming the referee's findings, with this comment: "all of the evidence with regard to the physical violence done to the decedent's body, as a result of the accident he sustained, leads to the conclusion that the physicial bruises and contusions received by the decedent were purely coincidental, rather than causative factors incident to the death which followed."

Since there is substantial competent testimony sufficient to support these findings and conclusions of the compensation authorities in refusing an award we may not disturb them.

The judgment entered in favor of defendant and the order refusing to set aside the final receipt are affirmed.

---

[2] Dr. Behan, for claimant, admitted the controversy in the best of medical opinion as to the extent of the relation of trauma and cancer as a causative or aggravating factor though he said: "All textbook writers concede that trauma is a factor."